```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
  JAAKOV E. FRIEDMAN,                                       :
                                                            :
                            Plaintiff,                      :
                                                            :
                   - against -                              :   23-cv-0304 (BMC)
                                                            :
  CAVALRY PORTFOLIO SERVICES, LLC,                          :
                                                            :
                            Defendant.                      :
----------------------------------------------------------- X
  MENACHEM DEUTSCH,                                         :
                                                            :
                            Plaintiff,                      :
                                                            :   23-cv-3212 (BMC)
                   - against -                              :
                                                            :
  ALLIED ACCOUNT SERVICES, INC.                             :
                                                            :
                            Defendant.                      :
----------------------------------------------------------- X
```

## MEMORANDUM DECISION AND ORDER

**COGAN**, District Judge.

These two cases, brought by the same law firm for different plaintiffs under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, are consolidated for decision as the cases raise an identical standing issue.

Both cases involve a plaintiff who received a collection letter from their collection agency that, each plaintiff alleges, violated the FDCPA. They each brought suit in state court (as there is concurrent jurisdiction under the FDCPA), and in each case, defendants removed the action to this Court under federal question jurisdiction. Upon reviewing the complaints, the Court provided the parties an opportunity to show cause why these cases should not be remanded for failure of the complaints to allege an injury-in-fact sufficient to establish standing under

Article III of the Constitution. Plaintiffs in both cases have declined to claim Article III standing, but defendants have argued that plaintiffs' complaints are sufficient to confer standing. That might seem paradoxical, but this posture has become commonplace since TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021), as the collection and credit reporting industries have realized that, despite prevailing in Transunion, they would rather litigate these cases in federal court than in state court (at least in New York), and some plaintiffs' attorneys have the opposite preference.

The identical allegations in the complaints that arguably address an "injury" are just the sort of boilerplate, cookie-cutter assertions that any plaintiff could make should they receive a non-compliant collection letter. They are too vague to demonstrate standing. The cases are therefore remanded to state court.

## BACKGROUND

In Friedman, plaintiff alleges that the collection letter he received was confusing about whether making a payment would revive the debt under the statute of limitations. In Deutsch, plaintiff alleges that the collection letter sought to collect a debt that the creditor had already written off.

In each complaint, plaintiffs allege the following injuries:

> Because of the Defendant's actions, the funds the Plaintiff could have used to pay all or part of the alleged debt were spent elsewhere.
>
> Because of this, Plaintiff expended time and money in determining the proper course of action.
>
> In reliance on the Letter, Plaintiff expended time and money in an effort to mitigate the risk of future financial harm in the form of dominion and control over his funds.
>
> Plaintiff's reliance on the Letter, and the resulting inaction/non-payment, was detrimental to the Plaintiff because of the lost opportunity to settle the alleged debt at a discount.

In addition, Plaintiff suffered emotional and physical harm because of the Defendants' improper acts, including, but not limited to, fear, anxiety, stress, increased heartrate, and difficulty with sleep.

## DISCUSSION

"Federal courts are courts of limited jurisdiction that possess only that power authorized by the Constitution and statute." Hendrickson v. United States, 791 F.3d 354, 358 (2d Cir. 2015) (quotations omitted). The Constitution only empowers federal courts to adjudicate a "case or controversy." U.S. Const. art. III, § 2. The Article III standing doctrine emanates out of this case or controversy requirement, ensuring that "federal courts do not exceed their authority as it has been traditionally understood." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). As a result, this doctrine is "perhaps the most important of the jurisdictional doctrines." FW/PBS, Inc. v. Dallas, 493 U.S. 215, 230-31 (1990) (cleaned up).

The Supreme Court's recent cases have confirmed that the "irreducible constitutional minimum" of standing requires that plaintiffs demonstrate: (1) "an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision." Spokeo, 578 U.S. at 338 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 339 (quoting Lujan, 504 U.S. at 560). If the plaintiff does not claim "to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." TransUnion LLC v. Ramirez, 141 S. Ct. at 2203.

Prior to TransUnion, many courts held that Congress could confer Article III standing. See Cohen v. Rosicki, Rosicki & Assocs., P.C., 897 F.3d 75, 81 (2d Cir. 2018). Under that theory, if Congress creates a statutory cause of action, a violation of that statute is sufficient to

3

create an injury-in-fact for purposes of establishing Article III standing. Id. TransUnion rejected that approach, holding that although "Congress may create causes of action for plaintiffs to sue defendants[,] under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." TransUnion, 141 S. Ct. at 2205.

TransUnion further clarified that "*an injury to the plaintiff*" qualifies as "concrete" where it bears "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," such as "physical and monetary harms, along with other traditional tangible harms, [as well as] certain intangible harms, such as reputational harm." Maddox v. Bank of New York Mellon Tr. Co., N.A., 19 F.4th 58, 63, n.2 (2d Cir. 2021) (quoting TransUnion, 141 S. Ct. at 2204). "No concrete harm, no standing," and thus no federal court jurisdiction. TransUnion, 141 S. Ct. at 2200.

Courts considering standing allegations at the motion to dismiss stage have found that such "allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 401-02 (2d Cir. 2015) (quoting Baur v. Veneman, 352 F.3d 625, 631 (2d Cir. 2003)). Nevertheless, a plaintiff still must allege facts "that affirmatively and plausibly suggest that [he] has standing to sue." Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).

Although plaintiffs, content with their decision to sue in state court, have disclaimed any effort to assert standing, defendants point to the specific allegations set forth above as sufficient. I disagree. The type of conclusory allegations contained here, without more, do not plausibly suggest that plaintiffs have suffered anything like a concrete injury. See Brokamp v. James, 66 F.4th 374, 386 (2d Cir. 2023); see also Friends of the Earth, Inc. v. Laidlaw Environmental

4

Services, 528 U.S. 167, 180-81 (2000).  Plaintiffs' allegation that they "suffered emotional harm due to Defendant's improper acts," is "[a] perfunctory allegation of emotional distress . . . insufficient to plausibly allege constitutional standing." Maddox, 19 F.4th at 63 (2d Cir. 2021).  Plaintiffs just do not "plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief." Id. at 65-66; see also Wolkenfeld v. Portfolio Recovery Assocs., LLC, No. 22-cv-1156, 2022 WL 1124828, at *2 (E.D.N.Y. April 14, 2022) (rejecting same language).

Plaintiffs allege that they were "confused" by their letters, "unable to evaluate [their] options of how to handle this alleged debt," and "expended time and money in determining the proper course of action."  Most of the cases post-TransUnion find these types of allegations inadequate to demonstrate a concrete injury.  See, e.g., Cavazzini v. MRS Assocs., No. 21-cv-5087, 2021 WL 5770273, at *7 (E.D.N.Y. Dec. 6, 2021) (collecting cases) ("Multiple courts have found alleged confusion to be insufficient for standing in the FDCPA context.").  These types of alleged injuries – spending some unspecified amount of time and money because of mere "concern and confusion," without more, are not sufficiently concrete unless they are "'inextricably bound up in a cognizable injury,' such as where a plaintiff faces a sufficient risk of harm and then spends time, money, and effort mitigating that risk." Pollak v. Portfolio Recovery Assocs., LLC, No. 21-cv-6738, 2022 WL 580946, at *1 (E.D.N.Y. Feb. 24, 2022) (quoting Cavazzini, 2021 WL 5770273, at *7).  The bare allegation that "Defendant's actions created an appreciable risk to plaintiff of being unable to properly respond or handle Defendants' debt collection," does not cure this deficiency.  Benhayun v. Halsted Financial Services, No. 21-cv-4421, 2022 WL 4813538 (E.D.N.Y. Sept. 30, 2022).

Using the language of fraud in describing the claim does not help either. Plaintiffs' complaints are still devoid of the type of specific factual allegations that would allow the Court to assume that they did indeed plausibly rely on defendants' representation to their own detriment. See Maddox, 19 F.4th at 65-66 (a plaintiff must "plead enough facts to make it plausible that [he] did indeed suffer the sort of injury that would entitle [him] to relief"); Kola v. Forster & Garbus LLP, No. 19-cv-10496, 2021 WL 4135153, at *7 (S.D.N.Y. Sept. 10, 2021) ("merely receiving a letter from a debt collector that was confusing or misleading as to the amount owed does not demonstrate a harm closely related to fraudulent or negligent misrepresentation – both of which require some form of reliance – where the recipient's financial condition made the amount of money owed irrelevant."); Ciccone v. Cavalry Portfolio Servs., LLC, No. 21-cv-2428, 2021 WL 5591725, at *5 (E.D.N.Y. Nov. 29, 2021) ("Plaintiff does not allege . . . that he relied on [the wording] to his detriment in any way, or that he would have availed himself to the discount had the wording been clearer."). Conclusory allegations that "the funds [they] *could* have used to pay all *or part* of the alleged debt were . . . spent elsewhere" (emphasis added), and that they "would have pursued a different course of action," are thus insufficient.

Nor are "fear, anxiety, stress, increased heartrate, and difficulty with sleep" injuries-in-fact, at least when they are asserted in the conclusory manner of these complaints. The reason these allegations can be repeated across cases in cookie-cutter complaints is that they don't really mean anything and can rarely be disproven. Did their heart rate go up for more than a second? Did either plaintiff actually measure his heart rate? Did either plaintiff have to see a doctor? Did they have to get a prescription for a sleeping pill? The most likely answers to these questions are strongly suggestive that there was no injury in fact; at the very least, the vagueness of the

6

allegations "without some further factual enhancement . . . stop short of the line between possibility and plausibility[.]" Bell Atlantic v. Twombly, 550 U.S. 544, 546 (2007).

A review of the public record allows us to recognize these boilerplate allegations for what they are. First, plaintiffs' attorney brings dozens if not hundreds of these cases on behalf of different plaintiffs who all seem to have the exact same injury. See e.g., Steinmetz v. Financial Recovery Services, Inc., No. 21-cv-5981, 2022 WL 2441239 (E.D.N.Y. July 5, 2022) (same attorneys, same language). If one were to treat the allegations as factual, there is a remarkable uniformity of injury among all consumers who receive non-compliant collection letters. The Second Circuit has recognized that the use of cookie-cutter language across a broad swath of lawsuits is one indication of the implausibility of standing allegations. See Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68 (2d Cir. 2022) ("mass production" of complaints "render each Plaintiff's cookie-cutter assertion of standing implausible" (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). That admonition applies here.

And no one should fool themselves into thinking that when it comes time to settle these cases (virtually all of them are either dismissed on motion or settle), there is any real discussion about compensating a plaintiff for an injury he has suffered. "Judicial experience and common sense," Iqbal, 556 U.S. at 679, tell us that the settlements in these cases are about mitigating defense costs and the prospect of plaintiffs' counsel receiving an attorneys' fee. No doubt, plaintiffs who bring these cases receive some compensation for having lent their name to the endeavor, but there is no reason to conclude it is anything but nominal. That is why plaintiffs' counsel, in this case and others, is not apprehensive about abstaining from the issue of whether there is an injury-in-fact, despite the potential overlap between that issue and a lack of damages. They are just as happy to be in state court and avoid the Article III motion practice. They know

that when it comes down to resolving these cases, an inability to show damages is not what the settlement discussion is going to be about.

## CONCLUSION

The complaints in these actions do not demonstrate standing. Plaintiffs have failed to argue otherwise and defendants' arguments are not persuasive. The cases are therefore remanded to state court.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
       May 30, 2023